Good morning, may it please the court. Jim Wilborn for Appellant Linda Hart. In his brief, the Commissioner has portrayed this claimant as a person anybody could love to hate. And that isn't at all an inaccurate portrayal. Beyond all else, the ALJ's decision, the Commissioner's brief, and the District Court's opinion establish that Hart is obstreperous, disorderly, malevolent, and rancorous. And that she has an extreme limitation in the ability to accept instructions and to respond appropriately to authority figures. And this is precisely the assessment which was given by her treating psychiatrist, Dr. Dempsey, at excerpts page 440. Dr. Dempsey opined that Hart has a marked limitation in the ability to accept instructions and to respond appropriately to criticism from supervisors. Far from refuting this aspect of Dr. Dempsey's assessment, the ALJ's decision, the Commissioner's brief, and the District Court judge's opinion all establish that this aspect of Dr. Dempsey's assessment is unassailably correct. And the significance of this is that that limitation, a marked limitation in the ability to respond appropriately to criticism from supervisors, is disabled. If you can't take criticism from supervisors, you can't sustain a job. Now, this record, the Commissioner's brief, is pretty much a 20-page thesis on why this claimant is a bad person. And as I said, it's – I don't disagree with it. Well, the relevant issue, of course, is credibility. Were there – was there substantial evidence the record sustained the credibility finding? Well. And we have many references to judge-seeking – drug-seeking behavior, doctor shopping, et cetera. Let me address that, Your Honor. I disagree that this comes down to the credibility of the claimant at all, because one thing is indisputably credible, and this doesn't rely on the claimant's allegations. What is indisputably credible in this case is the fact that this claimant has a very severe limitation in her ability to get along with people. She has demonstrated that repeatedly. She's had multiple doctors who have fired her. She has thrown things in doctor's office. She has urinated on fellow patients in medical settings. I mean, she has been completely over the edge. And in Dr. Dempsey's assessment, at the bottom of the page, when he explains what the basis for his assessment is, it's critical to note, Your Honor, that one of the diagnoses he lists – this is on transcript page 440 – one of the basis diagnoses is personality disorder. Now, that in the commissioner's listings is listed under listing 12.08. And so it is a legitimate basis for disability. I know it sounds kind of strange to award benefits to somebody on the basis that they're just a bad person, but that is essentially what personality disorder recognizes, that the listing recognizes that a person who is sufficiently personality disordered may be unable to function appropriately in society. And that's the case here. Dr. Dempsey gave this assessment based in part on personality disorder, and his assessment was that she is markedly limited in her ability to respond to supervision. However, I understand that what really happened here is that the ALJ, in effect, says he doesn't know how much he supports Dempsey's mental impairments. And then another point, he suggests that she does have bipolar disorder and panic disorder. But I got the idea that what the ALJ was really saying, that the form he was giving little weight to, the form that Dr. Dempsey put together. And he was giving little weight to that, that there was no specifics on the situation, that he just checked the form with no explanation, and that, in fact, the plaintiff, the applicant here, substantially improved over time. Her personality. Even by going to the bipolar support group. Right. And, therefore, was not limited. I thought that's what the ALJ said. The ALJ did not simply say Dr. Dempsey's opinion is of no weight whatsoever. In fact, I think he gave Dr. Dempsey some weight. But what he was really saying is this form is of little weight because there are no specifics, they haven't checked, they check without explanation. And if you look at the record, she's substantially improved. She stopped going to her bipolar support group. Her bipolar disorder did improve. Her personality disorder did not improve. And that's the critical thing. The district court judge in addressing this stated that Dr. Dempsey's assessment was based on anxiety disorder, depression, and bipolar. But what the district court judge omitted is that it's also based on personality disorder. And that never improved. Remind me as to what the regulations say about personality disorder. Well, in Listing 12.08 of the listing of impairments, personality disorder is listed as an impairment which may be disabling per se. And so it's pretty clear that the agency, by listing that as a per se disabling impairment, considers it a legitimate basis for being disabled. Now, I haven't argued in my brief that she meets that listing because Dr. Dempsey didn't rate the B criteria. I think she does because if you look at Dr. Dempsey's ratings, it's pretty clear that they are markedly limited in the B criteria. But he didn't specifically rate them, and so I haven't made that argument. But my point is that it is a legitimately disabling condition. And in this case, it is disabling. What about with respect to her migraines, her failure to stop smoking? Well, my argument on that is that before the agency may deny benefits on the basis of failure to follow prescribed treatment, the agency has to comply with the mandates of Social Security ruling 8259. And that sets out a very lengthy and detailed process. You have to first tell the claimant that failure to comply will result in denial of benefits, give the claimant a chance to comply with the prescribed treatment, and so on. In this case, none of that was ever done, and therefore, my position is that that was an improper basis for denying the benefits on the basis of migraines. And it's uncontroverted in the record that even with her Topamax medication, the migraine medication, that she did continue to have migraines of a frequency which would be considered disabling, given the vocational expert's testimony. But Dr. Carlini never said they were severe, did he? Dr. Carlini doesn't discuss necessarily the severity of the migraines so much as the existence and the frequency of them. The description of what a migraine results in is contained in the claimant's statements and in the lay witness statements. But I think we all know that migraines are quite painful. Well, what we're really talking about here is that one has to suggest that, or one has to find that this is severe, that this disablement is severe. And so wherever you go, we can't step over step two about the severity of them. And so we have to look at the migraines and were they severe. And I think that's where my colleague's questions go. I mean, he never says they're severe. The MRI didn't say they were severe. The notes that he made in order to make his determination at all were certainly on her own testimony. And her own testimony was rejected because of pretty substantial convincing reasons. And so, therefore, I guess I'm having a tough time knowing how to go down the steps, the five-step analysis. If I can't get anybody to say it's severe, any of this disability, I can't jump to the next step and I can't find any severity here. Well, I think that's a valid point, Your Honor. But the point I argued in the briefs was that migraines, by their very nature, are severe if you have one. And the record establishes that the claimant has migraines of a frequency which, if you accept, for purpose of argument, purpose of discussion, that you can't be sustaining employment during a migraine, then the record establishes that they not only are severe but that they are disabled. So the question is whether a migraine, by its very nature, is a severe impairment.  Your time has expired. We'll hear from the agency, from the commissioner. May it please the Court. Richard Morris on behalf of the Commissioner of Social Security. And, initially, I would like to apologize. Counsel of record for the commissioner is not here today. Apparently, there was a misunderstanding and counsel was under the impression this case had been submitted on briefs. Well, five of them have been submitted, so I suppose we can understand that. Do you care to answer or offer any comment? I wish to make a comment. Of course, you can certainly rely on your briefs. I do wish to rely on the briefs primarily, but I would like to make a couple comments. I'm not familiar with the details or the facts of the case other than the basic facts, and it appears there is more than adequate evidence of lack of credibility on the claimant's part here. The drug-seeking behavior, ordering on the lingering impacts everything else, and to the extent that her behaviors might have demonstrated certain limitations, those are all up in the air because of the issue of credibility, and the commissioner believes that is one of the key issues in this case. The ALJ, as the trier of the record, holds a hearing, listens to the claimant, looks at all the records, and he's in the best position to make that decision. Other than that, the commissioner would just like to rest on the briefs that are submitted. Thank you, counsel. The case just argued will be submitted for decision.
judges: Whyte, O'scannlain, Smith M.